# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| DAVID EDWARD NILES, ) | |
| ) | Case No. 4:16-cv-13 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| DEBRA JOHNSON, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by *pro se* prisoner David Edward Niles ("Petitioner"), challenging the constitutionality of his confinement under a state-court judgment of conviction of first-degree premeditated murder (Doc. 1). Respondent filed a response in opposition to Petitioner's pleading, as well as a copy of the state record (Docs. 14, 15). Petitioner filed a reply to Respondent's response (Doc. 18).

For the reasons set forth below, Petitioner's § 2254 petition (Doc. 1) will be **DENIED** and this action will be **DISMISSED**.

## I.  PROCEDURAL HISTORY

Petitioner was convicted by a Bedford County jury of first-degree premeditated murder and was sentenced by the trial court to life imprisonment. *State v. Niles*, No. M2011-01412-CCA-R3CD, 2012 WL 1965438, at *1 (Tenn. Crim. App. June 1, 2012), *perm. app. denied* (Tenn. Oct. 17, 2012). On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the conviction. *Id*. The Tennessee Supreme Court ("TSC") denied Petitioner's application for permission to appeal. *Id*.

Petitioner filed a timely *pro se* petition for post-conviction relief. *Niles v. State*, No. M201400147CCAR3PC, 2015 WL 3453946, at *4 (Tenn. Crim. App. June 1, 2015) *perm. app. denied* (Tenn. Sept. 17, 2015). The post-conviction court appointed counsel, denied relief after holding an evidentiary hearing, and reappointed counsel for Petitioner in the event of an appeal. *Id*.

Petitioner filed a notice of appeal along with a motion to remove counsel. *Id*. Following the post-conviction court's denial of the motion to remove counsel, post-conviction counsel filed a motion to withdraw. *Id*. The TCCA reviewed counsel's motion to withdraw and ordered the post-conviction court to conduct a hearing on the matter. *Id*. Following that hearing, the post-conviction court determined that Petitioner could proceed *pro se*. *Id*. Petitioner proceeded *pro se* on appeal, and the TCCA affirmed the judgment of the post-conviction court. *Id*. Thereafter, the TSC denied Petitioner's application for permission to appeal. *Id*.

Petitioner filed a timely *pro se* petition for a writ of habeas corpus on November 4, 2015 (Doc. 1). This matter is now ripe for the Court's review.

## II.     FACTUAL BACKGROUND

The TCCA summarized the facts of this case in its opinion on direct appeal as follows:

This case concerns the January 11, 2010 shooting death of victim Laura Parker. Niles, who had a four-year-old son with the victim, was arrested for this crime. He subsequently filed an *ex parte* motion for funds for a psychiatrist and a motion to suppress the evidence seized during the search of his home.

. . .

At approximately 8:30 p.m. on January 11, 2010, Isaac Williams and Timothy Farliss were moving some furniture at the Forest Hill Apartments when they heard two gunshots. Williams immediately called 911. While Williams was on the phone with the 911 dispatcher, he walked toward the sound of the gunshots and saw a white Nissan vehicle with tinted windows driving away from the complex with its lights off. The car did not turn on its headlights until it was almost out of the parking lot. Then the white car turned left out of the lot. Williams relayed the description of the car to the 911 dispatcher. Farliss also saw

2

this car before it left the parking lot. An instant later, Williams heard someone scream that a person had been shot, and he called 911 a second time to tell them to send an ambulance. Williams walked toward the sound of the person screaming and observed the body of the deceased victim, who had been shot in the head.

The officers who responded to the scene found two nine-millimeter shell casings manufactured by Speer and a bullet hole just to the right side of the victim's apartment door. Officers were unable to find the bullet that struck the area to the right side of the victim's door.

As Sergeant James Wilkerson and Lieutenant Jason Williams were responding to the incident, they received the description of the vehicle seen leaving the crime scene. At the time they received the description, they passed a small white car with tinted windows. They immediately turned around and stopped this vehicle. Sergeant Wilkerson approached the driver, later identified as the Defendant-Appellant, David Edward Niles, and informed him that police were investigating a shooting and that his vehicle matched the description of the vehicle leaving the scene. He then asked the driver for his license, and Niles responded that he did not have any identification with him.

Sergeant Wilkerson next asked Niles if he had a firearm in the vehicle. Niles responded affirmatively and reached for a nine-millimeter Glock handgun. Sergeant Wilkinson grabbed Niles and pulled him out of his vehicle. He did a quick pat-down, handcuffed him, read him his *Miranda* rights, and placed him in the back of his patrol car. He then asked for his name, which Niles provided. Niles asked Sergeant Wilkerson to call his wife to notify her of his whereabouts. A short time later, Williams and Farliss identified Niles's vehicle as the vehicle they saw leaving the crime scene.

When Niles was placed in the patrol car, Sergeant Wilkerson and Lieutenant Williams looked inside Niles's vehicle, they observed a black ski mask, a black baseball cap, a pair of gloves, a white towel, a handgun case, and a nine-millimeter Glock handgun in plain view on the front passenger seat. A firearm trace of the handgun showed that Niles owned the gun and had purchased the gun and a box of Speer nine-millimeter ammunition from the Outpost Armory with his debit card on December 19, 2009.

As Officer Wilkinson retrieved a crime scene log-in sheet from the backseat of his patrol car, Niles told him that he and his wife were having marital difficulties and that he had been driving the roads with the gun, trying to clear his mind. Officer Wilkinson asked Niles if he had shot the gun that night, and Niles replied that he had shot it twice in the air on a deserted road. Officer Wilkerson then called Mrs. Niles and asked if she and Niles had been having marital difficulties, and she responded that this was not the case. Officer Wilkinson then drove Niles to the Shelbyville Police Department.

The Glock that was found in Niles's car had thirteen rounds in it, including one round in the chamber. The Glock's magazine had a maximum capacity of fifteen rounds. The rounds were nine-millimeter Luger hollow points, which were manufactured by Speer. The hollow point rounds were designed to expand on impact, thereby causing serious injuries. The shell casings found at the crime scene matched the ammunition found in Niles's car. Testing by the Tennessee Bureau of Investigation (TBI) confirmed that the shell casings at the crime scene had been fired from the Glock handgun recovered from Niles's car. Officers later found a box of Speer nine-millimeter Luger hollow point rounds in Niles's home. Although the box held twenty rounds, only five were in the box at the time it was recovered.

In addition to the fully assembled Glock handgun, the officers found a spare Glock firing pin, a spare Glock barrel, and a Glock disassembly tool in the handgun case in Niles's car. The officers also discovered that the serial number stamped on the barrel of the recovered Glock differed from the serial number on the Glock's frame and slide, despite the fact that the serial numbers for these parts were supposed to be identical. However, the serial number of the spare Glock barrel found in the handgun case was identical to the serial number on the Glock's frame and slide. TBI testing showed that the shell casings found at the scene exhibited signs that they were fired with a different barrel and firing pin than the stock barrel and firing pin found in the handgun case in Niles's car.

One of the gloves found in Niles's car showed traces of gunshot primer residue, which indicated that the glove had been in contact with or near a gun when it was fired. Papers found in the victim's car showed that Niles and the victim had a four-year-old son together. Officers also discovered that the victim had recently been giving her work schedule to Niles.

Sometime after the victim's murder, Detectives Crews and Merlo became aware that the barrel of the handgun found in Niles's car had a different serial number than the number on the gun's slide and the frame. On January 13, 2010, Detectives Crews and Merlo interviewed Niles's wife at the police station, and she gave the detectives permission to seize some boxes of ammunition that were in the home she shared with Niles. During this search, the detectives seized two boxes of ammunition, including the twenty-round box of Speer hollow point ammunition with only five rounds remaining, and the TopGlock receipt showing that Niles purchased a replacement firing pin, a replacement barrel, and a Glock disassembly tool prior to the victim's death. This evidence was found on the top shelf of the closet in the master bedroom. The TopGlock receipt was dated December 20, 2009, the day after Niles bought the Glock at the armory. In addition, the detectives found a date planner in Niles's home that contained the victim's work schedule, including her work schedule for the date of her death.

> While in jail, Niles spoke to Officer Cameron Farrell shortly after midnight on
> January 14, 2010. Niles told Officer Farrell numerous times that "he knew it
> would sound crazy" but that "God told him to kill [the victim]." Niles told
> Officer Farrell that the victim was "an unfit mother" to their son. He also told
> Officer Farrell that he considered leaving the victim's apartment complex because
> he believed that God had told him not to kill the victim but that he changed his
> mind and decided to kill the victim. He said he stopped his vehicle, got out, and
> took two steps towards the victim before shooting her in the head with the first
> shot. He said he shot the victim a second time, but he was not sure where the
> bullet struck her. Niles said the victim never saw his face because he was wearing
> a ski mask. He also told Officer Farrell that he had done online research about
> defeating ballistics testing by using a replacement barrel and firing pin in the gun.
> Niles then asked to speak with a "short heavy-set detective" who was identified
> by Officer Farrell as Detective Merlo. Officer Farrell subsequently talked to
> Detective Merlo about the information that Niles had just given him regarding the
> case. At Detective Merlo's request, Officer Farrell completed a report regarding
> the conversation he had with Niles. However, Detective Merlo was unable to
> speak with Niles about his conversation with Officer Farrell.
>
> The victim's autopsy confirmed that she had been shot in the head and neck with
> a gun at an indeterminate range. The report stated that the victim's cause of death
> was multiple gunshot wounds. It also determined that the gunshot wound to her
> head or her neck could have resulted in her death. The copper-plated lead
> fragments found in the victim's body were consistent with the Speer cartridge
> cases for the rounds found in the Glock handgun in Niles's car and the
> ammunition found in Niles's home. The rifling marks on the fragments found
> were also consistent with rifling marks produced by Glock firearms.

*State v. Niles*, 2012 WL 1965438, at *7–9.

The opinion of the TCCA affirming the decision of the post-conviction court contains a recitation of the evidence presented at the evidentiary hearing held by the post-conviction court and summarizes the testimony heard from Petitioner, his trial counsel, and numerous other witnesses in that proceeding. *Niles*, 2015 WL 3453946. Specifically, testimony from trial counsel about his decision not to file a motion to suppress the traffic stop, along with testimony from Officer Farrell and Petitioner regarding their past relationship, will be addressed in more detail below in the analysis of those specific claims.

## III. STANDARD OF REVIEW

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, which amended § 2254, sets forth "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). By this standard, when a state court adjudicates a claim on the merits, habeas relief is available only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's ruling is an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from Supreme Court precedent but unreasonably applies it to the facts of the particular state prisoner's case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

Under AEDPA, a habeas petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

6

disagreement.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet," "highly deferential," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

IV. **PETITIONER'S CLAIMS FOR RELIEF**

Petitioner's § 2254 habeas corpus petition raises three claims for relief:

(1) Ineffective assistance of post-conviction counsel;

(2) Ineffective assistance of trial counsel, specifically:

(a) that his trial counsel was ineffective for failing to investigate the allegedly illegal traffic stop and failing to present and argue a motion to suppress based on the illegal stop, (Doc. 1, at 10), and that the TCCA premised its rejection of this claim on erroneous information,[1] (*Id*. at 12);

(b) and that trial counsel was ineffective for failing to investigate and to discover that, due to animosity toward Petitioner, a correctional officer falsely testified that Petitioner confessed to shooting the victim, (*Id*. at 10).

V. **INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel but to "reasonably

---

[1] Although raised as separate allegations in the § 2254 petition, when analyzing Petitioner's claims, Respondent addressed Petitioners claims that the state court based its decision on erroneous information with the claim that trial counsel was ineffective for failing to file a motion to suppress the traffic stop. (Doc. 15, at 14.) This Court agrees that these claims are related and should be addressed together.

7

effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the proceedings unfair and the result unreliable. *Id.* In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Id.* at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

When a petitioner raises an ineffective-assistance-of-counsel claim in a § 2254 petition, the Court must review the state court's ruling on that claim under AEDPA's highly deferential standard. Thus, in order to succeed on a federal claim of ineffective assistance of counsel, a

habeas petitioner must demonstrate that the state court's ruling on his-ineffective-assistance-of-counsel claim was an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

A.  **Ineffective Assistance of Post-Conviction Counsel**

Petitioner claims his conviction and sentence are void because his post-conviction counsel was ineffective. He contends post-conviction counsel failed to communicate meaningfully with him; failed to follow the requirements of Tennessee Supreme Court Rule 28, and failed to file an amended petition for post-conviction relief. (Doc. 1, at 7; Doc. 2, at 11.) Petitioner raised these issues in his post-conviction appeal, and the TCCA addressed the claims as follows:

> Petitioner alleges that he received ineffective assistance of counsel at the post-conviction level and that the "federal rulings in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Sutton v. Carpenter,* 745 F.3d 787 (6th Cir. 2014), establish the right of effective assistance of counsel at a post-conviction evidentiary hearing." Petitioner argues that these cases, coupled with post-conviction counsel's failure to "meet the very lax requirements of T[ennessee] Sup[reme] C[ourt] R[ule] 28" entitle him to relief in the form of a remand for a new post-conviction hearing with newly appointed counsel and the opportunity to file an amended petition.
>
> We disagree. This Court has repeatedly held that *Martinez* does not entitle a petitioner to make such a claim. In *Martinez*, the United States Supreme Court stated:
>
>> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.
>
> 132 S.Ct. at 1320. This Court has declined to extend *Martinez* to state proceedings. *See, e.g., Charles McHaney v. State*, No. M2014–00290–CCA–R3–

9

PC, 2014 WL 3384666, at *3 (Tenn. Crim. App. July 10, 2014); *Ruben Pimentel v. State*, No. M2011–01309–CCA–R3–PC, 2013 WL 4505402, at *3 (Tenn. Crim. App. Aug. 21, 2013).

Likewise, *Trevino* does not provide relief for Petitioner in this Case. In *Trevino*, the Supreme Court concluded that *Martinez* applies not only where state law mandates that a claim of ineffective assistance of counsel must be raised in a post-conviction proceeding but also "where ... state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S.Ct. at 1921. The result of *Trevino* was to slightly expand the holding of *Martinez*. It, too, does not compel the relief sought by Petitioner.

Petitioner does not have a constitutional right to the effective assistance of post-conviction counsel. *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). The right to post-conviction counsel is statutorily based, found in the Post–Conviction Procedure Act. T.C.A. § 40–30–107(b). The justification for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." *Frazier*, 303 S.W.3d at 680. In furtherance of this purpose, our supreme court requires a minimum standard of service for all post-conviction counsel. *Id.*; *see* Tenn. Sup. Ct. R. 28 § 6(C)(2)-(4). However, it should be pointed out that these rules "do not provide any basis for relief from a conviction or sentence." *Frazier*, 303 S.W.3d at 681. Due process in the post-conviction context requires merely that "the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing requires only "the opportunity to present proof and argument on the petition for post-conviction relief." *House*, 911 S.W.2d at 714.

In the case herein, Petitioner complains that post-conviction counsel did not file an amended petition or comply with Rule 28. As a result, he asks us to grant him a second bite at the apple. We decline to do so. Petitioner received the benefit of the full extent of due process of law and assistance of post-conviction counsel. Post-conviction counsel pursued Petitioner's claims of ineffective assistance of trial and appellate counsel at the evidentiary hearing. Witnesses were presented to lend support to the arguments advanced in the petition filed pro se by Petitioner. On appeal, Petitioner has provided us with no legal authority entitling him to a second post-conviction hearing for the alleged shortcomings of his post-conviction counsel because he is not entitled to effective representation beyond what he has already received. Our supreme court has expressly held that an allegation of ineffective assistance of post-conviction counsel "does not establish a legal excuse for failure to raise ... issues in the initial proceeding." *House*, 911 S.W.2d at 712. Moreover, this Court has repeatedly held that violations of Rule 28 by post-conviction counsel do not warrant a second post-conviction hearing. *See, e.g., Thaddeus Johnson v. State*, No. W2014–00053–CCA–R3–PC, 2014 WL

7401989, at *9 (Tenn. Crim. App. Dec. 29, 2014), *perm. app. filed* (Tenn. Feb. 26, 2015); *Anthony Boyland v. State*, No. W2013–01226–CCA–MR3–PC, 2014 WL 3818612, at *17 (Tenn. Crim. App. Aug. 4, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014); *Jonathan Everett v. State*, No. W2013–02033–CCA–R3–PC, 2014 WL 3744498, at *6–7 (Tenn. Crim. App. Jul. 28, 2014), *perm. app. denied* (Tenn. Nov. 19, 2014). Petitioner is not entitled to relief on this issue.

*Niles v. State*, 2015 WL 3453946, at *6–7.

Claims of ineffective assistance of post-conviction counsel are not cognizable on habeas review. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding that prisoners have no constitutional right to an attorney in state post-conviction proceedings and therefore cannot claim constitutionally ineffective assistance of counsel in such proceedings). Moreover, the Sixth Circuit has held that "the writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) (following *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

The state court correctly observed that there is no constitutional right to the effective assistance of post-conviction counsel and that Petitioner's allegations do not fall under the narrow exceptions held in *Martinez*. Accordingly, the state court properly rejected this claim, and Petitioner is not entitled to relief.

### B. Ineffective Assistance of Trial Counsel

Petitioner claims his conviction and sentence are void because his trial counsel was ineffective. (Doc. 1, at 10; Doc. 2, at 19–21). He claims that trial counsel was ineffective for failing to investigate the traffic stop and for failing to file a motion to suppress based upon the

11

illegality of the stop. (*Id*.) He also claims that the TCCA based its "decision on the erroneous information provided by the State" regarding the distances and times between the shooting and the traffic stop of Petitioner. (Doc. 2, at 22.) Finally, he contends that trial counsel was ineffective for failing to investigate and to present evidence that Petitioner did not confess to Bedford County Sheriff's Deputy Cameron Farrell and that Deputy Farrell "had personal animosity" towards Petitioner in the motion to suppress Petitioner's confession. (*Id*. at 19.)

The TCCA addressed these issues as follows:

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40–30–103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40–30–110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of trial counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that trial counsel's performance was deficient and that deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms. *Id.*; *Henley*, 960 S.W.2d at 579. This Court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. This Court will not use hindsight to second-guess a reasonably-based trial strategy. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.

1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Whether a petitioner has been denied the effective assistance of trial counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields,* 40 S.W.3d at 458.

*Trial Counsel*

In support of his claim of ineffective assistance of trial counsel, Petitioner has alleged several errors both prior to trial and at trial. Petitioner alleges that his trial counsel was ineffective for failing to thoroughly investigate the scene and circumstances of his arrest and subsequent confession. He believes that he was prejudiced thereby because trial counsel failed to file a motion to suppress the search of his vehicle. Petitioner claims that one of the officers had "personal animosity" toward Petitioner that was a remnant of some high school altercation. Additionally, Petitioner complains that the motion to suppress his statement and the search of his residence that was filed by trial counsel was ultimately denied and the evidence was admitted against him during trial. *See David Edward Niles*, 2012 WL 1965438, at *11–12.

Trial counsel's failure to adequately prepare for a dispositive motion hearing or to investigate the circumstances of a potentially unconstitutional interrogation can be the basis for a claim of ineffective assistance of counsel. *See Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) ("Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner."). According to Petitioner, had trial counsel filed an additional motion to suppress, both motions would have been successful. Petitioner hones in on the specifics of why and how he was apprehended,

contending that the time and distance from the shooting to the traffic stop lend credence to his assertion that a motion to suppress the search of his vehicle would have been granted had it been filed. However, in this case, trial counsel testified that he investigated thoroughly, looked at all the facts, and determined that an additional motion to suppress would be frivolous. The post-conviction court accredited this testimony. From the record, it appears that this was a trial tactic made after adequate preparation and planning. *See Adkins*, 911 S.W.2d at 347; *Cooper*, 847 S.W.2d at 528. Petitioner is not entitled to relief on this issue.[1]

[FN 1]: We also note that, from our review of the record and the briefs, it appears that Petitioner does not raise on appeal all of the issues that were identified in his petition. For example, Petitioner seems to abandon on appeal his argument that trial counsel failed to thoroughly investigate and call two witnesses. Any issues that were raised in the post-conviction court but that have not been pursued on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008–02280–CCA–R3–PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."). Moreover, had the issue not been waived, trial counsel testified that he interviewed one of the witnesses, Tina Sanders, and found her testimony unnecessary. Again, this Court must be highly deferential to counsel's performance, *Burns*, 6 S.W.3d at 462, and we will not second-guess the informed tactical decisions of trial counsel. *Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008) (citing *Henley v. State*, 960 S.W.2 572, 579 (Tenn. 1997)). The record reflects that counsel adequately prepared for trial and made informed strategic decisions. Additionally, because we have determined Petitioner made an insufficient showing of deficiency with regard to the presentation of these witnesses, we need not address the issue of prejudice. *See Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Nevertheless, we note that Petitioner failed to present any of these proposed witnesses at the post-conviction hearing. This Court has repeatedly concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

*Niles v. State*, 2015 WL 3453946, at *4–6.

### 1. Traffic stop

This Court finds that the state court correctly identified and applied *Strickland* to address Petitioner's claim, and the record supports the state court's finding that trial counsel made a strategic decision not to file a motion to suppress. Trial counsel testified as follows: "Well, if you look at the facts, the 911 call was made; officers exited the building immediately; sped to the

scene. There was a description of the vehicle. There was a report of a shooting and just almost immediately he met the car that matched the description." (Doc. 14–18 p. 46). Based on the facts and circumstances surrounding the stop, "[trial counsel] thought there was no legal basis" to file a motion to suppress the stop of Petitioner's vehicle. (*Id*.). In fact, he testified that a motion to suppress "would have been frivolous." (*Id*.). Trial counsel was not ineffective for failing to pursue a motion to suppress not supported by the evidence.

Consequently, Petitioner cannot show that the TCCA rejected this claim based upon erroneous information. In his § 2254 petition, Petitioner argues that trial counsel should have filed a motion to suppress because of the time and location of the traffic stop (Doc. 2). He emphasized the alleged discrepancy as to whether the stop occurred one or two miles away from the site of the shooting (*Id*.). However, the TCCA rejected the claim that trial counsel was ineffective for failing to file a motion to suppress based on the determination that trial counsel made an overall tactical decision after a thorough investigation of *all* of the facts surrounding the stop, not just the time and distance between the shooting and traffic stop. Accordingly, Petitioner cannot show that the TCCA rejected his claim of ineffective assistance of trial counsel based on erroneous determination of the distance and time between the shooting and the traffic stop.

This Court finds that Petitioner has not met his burden of demonstrating that he is entitled to relief on this claim as he has not provided any evidence to diminish the deference owed to the state court's factual findings under § 2254(d). Petitioner may disagree with the result reached by the state courts, but he failed to describe how the state court's adjudication of his claim was anything other than reasonable under the *Strickland* standard. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall,* 238 F. App'x

32, 39–40 (6th Cir. 2007). Based on this Court's review of the record, the state court's decision met the AEDPA standard of review because it was not contrary to and did not involve an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings.

                2.       *Statements to Deputy Farrell*

Petitioner alleges that trial counsel "fail[ed] to discover[ ] and present the abusive history between Deputy Cam Farrell and [Petitioner]" and "fail[ed] to identify the false statements claimed by Farrell within the body of the so called 'confession . . . .'" (Doc. 2, at 21.) Respondent asserts that Petitioner properly presented this ineffective-assistance claim to the higher state court, which affirmed the denial of post-conviction relief without specifically addressing the claim in its opinion. (Doc. 27, at 27.) However, Respondent argues that "[w]hen a federal claim has been presented to the state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication of state-law procedural principles to the contrary[.]" (*Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 99 (2011)).)

The TCCA addressed this matter as follows:

> While in jail, Niles spoke to Officer Cameron Farrell shortly after midnight on January 14, 2010. Niles told Officer Farrell numerous times that "he knew it would sound crazy" but that "God told him to kill [the victim]." Niles told Officer Farrell that the victim was "an unfit mother" to their son. He also told Officer Farrell that he considered leaving the victim's apartment complex because he believed that God had told him not to kill the victim but that he changed his mind and decided to kill the victim. He said he stopped his vehicle, got out, and took two steps towards the victim before shooting her in the head with the first shot. He said he shot the victim a second time, but he was not sure where the bullet struck her. Niles said the victim never saw his face because he was wearing a ski mask. He also told Officer Farrell that he had done online research about defeating ballistics testing by using a replacement barrel and firing pin in the gun. Niles then asked to speak with a "short heavy-set detective" who was identified

16

> by Officer Farrell as Detective Merlo. Officer Farrell subsequently talked to Detective Merlo about the information that Niles had just given him regarding the case. At Detective Merlo's request, Officer Farrell completed a report regarding the conversation he had with Niles. However, Detective Merlo was unable to speak with Niles about his conversation with Officer Farrell.

*State v. Niles*, 2012 WL 1965438, at *9.

After speaking to both Petitioner and Officer Farrell, trial counsel filed a motion to suppress the statements made by Petitioner to Officer Farrell, claiming "[t]hat [Petitioner] made the statement only after being coerced and tricked by what he thought was a friend and feeling he had no other choice but to confess due to not being in his right mind . . ." (Doc. 14-1, at 89.) The trial court determined that Petitioner's statements were unsolicited by anything said or done by law enforcement or any agent of law enforcement and that Petitioner was not questioned or interrogated. (Doc. 14-1, at 181.)

A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Federal courts strongly presume that a state appellate court's summary affirmance was on the merits and cannot grant relief unless the result does not comply with the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. AEDPA requires heightened respect for state-court factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Here, Petitioner failed to meet his burden of proof to refute the presumption of correctness offered to the state court.

17

First, the record indicates that the TCCA addressed the merits of Petitioner's claim that Officer Farrell had assaulted Petitioner in high school and held a grudge against him. The TCCA concluded that Officer Farrell's testimony refuted this claim. (Doc. 14-7, at 158.) At trial, Officer Farrell testified that he attended high school with Petitioner and that there was no animosity between them. (*Id*.) Second, there is no evidence in the record that Officer Farrell falsely testified that Petitioner confessed. Petitioner has not shown any evidence that trial counsel was ineffective in preparing or filing the motion to suppress his statement. Accordingly, Petitioner is not entitled to relief.

## VI. CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition (Doc. 1) will be **DENIED** and this action will be **DISMISSED**.

## VII. CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484. After reviewing each of Petitioner's

18

claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted. Further, in view of the law upon which the dismissal on the merits of the adjudicated sub-claim is based, reasonable jurists could not disagree with the correctness of the Court's resolution of this claim. Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims are inadequate to deserve further consideration, and the Court will **DENY** issuance of a COA. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

    **AN APPROPRIATE JUDGMENT WILL ENTER.**

    */s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**